IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONIA COLVIN-WARD, | ) | CASE NO. 1:16 CV 1199 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Tonia Colvin-Ward under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under the initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 6.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.     Background facts and decision of the Administrative Law Judge ("ALJ")

Colvin-Ward, who was 50 years old at the time of the administrative hearing,[11] graduated high school and attended college for two years.[12]  She lives alone in an apartment.[13]  Her past relevant employment history includes work as a barbecue cook, tow motor operator, scrap sorter, and general office clerk.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Colvin-Ward had the following severe impairments: back disorder (degenerative disc disease of the lumbar spine) and mood disorder (anger management problems, anxiety, suspiciousness, impulsivity) (20 CFR 416.920(c)).[15]

---

[7] ECF # 25 (Commissioner's brief); ECF # 16 (Colvin-Ward's brief).

[8] ECF # 25-1 (Commissioner's charts); ECF # 17-1 (Colvin-Ward's charts).

[9] ECF # 17-2 (Colvin-Ward's fact sheet).

[10] ECF # 27.

[11] ECF # 17-2, at 1.

[12] ECF # 9, Transcript ("Tr.") at 87.

[13] *Id*. at 53.

[14] *Id*. at 34.

[15]  *Id*. at 26.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Colvin-Ward's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following restrictions. The claimant can lift 20 pounds occasionally and 10 pounds frequently. She can walk, stand, and sit 6 out of 8 hours. She has no limitations on pushing and pulling. Her ability to work does not contain any visual limitations or compensate for any communication disorder. She can occasionally use a foot pedal and can occasionally use ramps or stairs. She can never use ladders, ropes, or scaffolds. She can balance frequently and can occasionally stoop, kneel, and crouch. She must avoid temperature extremes, particularly cold. Her work must not involve unprotected heights or dangerous moving machinery. Further, she has no memory limits and can maintain concentration, persistence, and pace for simple routine work that does not require fast pace or production quotas. She has no limits on interacting with the general public, coworkers and supervisors. She is limited to routine type work. Finally, she would occasionally require the use of a cane for ambulating distances.[16]

Given that residual functional capacity, the ALJ found Colvin-Ward incapable of performing her past relevant work as barbecue cook, scrap sorter, tow motor operator, and office general clerk.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Colvin-Ward could perform.[18] The ALJ, therefore, found Colvin-Ward not under a disability.

---

[16] *Id.* at 29.

[17] *Id.* at 34.

[18] *Id.* at 35.

**B.      Issues on judicial review**

Colvin-Ward asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Colvin-Ward presents the following issues for judicial review:

- Whether the ALJ's assessment of mental and physical residual functional capacity is supported by substantial evidence.[19]

- Whether the ALJ failed to properly apply the treating physician rule in evaluating the opinion of psychiatrist, Dr. Svete and physician Yvette Phillips.[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

**A.      Legal standards**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[19] ECF # 16, at 1.

[20] *Id.*

this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

a detailed, longitudinal picture of your medical impairment(s) and may bring
a unique perspective to the medical evidence that cannot be obtained from
objective medical findings alone or from reports of individual examinations,
such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case

record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is

disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not

entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional

limitations and work-related capacity in light of those limitations.[28] Although the treating

source's report need not contain all the supporting evidence to warrant the assignment of

controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable

---

[24] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such

supporting evidence exists, the Court will review the administrative record as a whole and

may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating

source rule in the regulations with particular emphasis on the requirement that the agency

"give good reasons" for not affording controlling weight to a treating physician's opinion in

the context of a disability determination.[33] The court noted that the regulation expressly

contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

---

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned

the opinion of the treating physician little weight and explained that finding by the secondary

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

and the treatment reports.[52] The court concluded that the ALJ failed to provide "good

reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail
> to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's
> treatment relationship with Gayheart, as well as alleged internal
> inconsistencies between the doctor's opinions and portions of her reports. But
> these factors are properly applied only after the ALJ has determined that a
> treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's

regulations recognizes a rebuttable presumption that a treating source's opinion should

receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each

treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B.    Application of standards

The two issues raised by Colvin-Ward are related, and may be considered and resolved together. Essentially she argues that because the ALJ failed to properly analyze and weigh the opinions of two treating sources,[72] the RFC is not supported by substantial evidence.[73]

---

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

[72] ECF # 16 at 18-21.

[73] *Id*. at 12-18.

## 1.    *Treating source analysis*

Colvin-Ward maintains that the ALJ failed to correctly analyze the functional opinion of Dr. Thomas Svete, M.D., Colvin-Ward's treating psychiatrist by not strictly following the two-step analytical review set out in *Gayheart* and then by giving Dr. Svete's opinion only "some" weight, a term that Colvin-Ward asserts is unclear.[74]  She also maintains that the ALJ failed to fully utilize a full *Gayheart* analysis in deciding to accord "little weight" to the opinion of Dr. Lovette Phillips, D.O., a treating source who saw Colvin-Ward several times in 2012 and 2013.[75]

In both situations, I note initially, as I have in prior opinions, that the Sixth Circuit has recently been construing *Gayheart* as not requiring a distinct factor-by-factor analysis as part of two clearly different stages of analysis. Rather, that court has found that the treating source weight analysis mandated by *Gayheart* is deemed met when the ALJ states sufficiently specific good reasons for the weight assigned, reflecting consideration of the relevant *Gayheart* factors.[76]

---

[74] *Id*. at 19-20.

[75] *Id*. at 20.

[76] *Kutsick v. Commissioner of Social Security*, No. 1:15 CV 2339, 2017 WL 413995, at * 3 (N.D. Ohio Jan. 31, 2017)(citation omitted).

*a.*     *Dr. Svete*

In the case of Dr. Svete, the ALJ initially noted that Dr. Svete provided a single functional opinion in January 2014.[77] She then recited some of the elements of that opinion, and concluded by discussing Dr. Svete's observation that Colvin-Ward could only occasionally maintain her appearance, relate predictably, manage funds or leave home alone.[78] The ALJ noted that Dr. Svete had not suggested that there were any mental tasks that Colvin-Ward could perform only rarely, and further observed that Dr. Svete's explanation for the identified behavior issues - "moderate to sever mood swings, anger management problems, anxiety, suspiciousness and impulsivity" - was undermined by his own treatment notes that documented that "these problems are controlled with prescribed medications, when [Colvin-Ward ] chooses to pursue the treatment."[79]

Colvin-Ward contends that the ALJ was incorrect in finding that she is frequently non-compliant in taking her prescribed psychiatric medications, and is further incorrect in finding that her mental functioning is fine when taking that medication.[80] In that regard she points to a treatment note of April 28, 2017 where Colvin-Ward reports continuing, if occasional, auditory and visual hallucinations, and further reports having trouble sleeping,

---

[77] Tr. at 33.

[78] *Id*. at 34.

[79] *Id.*

[80] ECF # 16 at 19.

especially "with running out of meds."[81]  She asserts that this treatment note does not support the conclusions that she was currently non-compliant with her medication nor that even with medication her mental condition was improving, an assertion she contends is not supported by worsening mental status examinations in April and June of 2013.[82]

But, the Commissioner responds by pointing to treatment notes that show that with medication adjustments Colvin-Ward's mood improved, she had fewer hallucinations, was less guarded and had normal speech.[83]  Further, the Commissioner also cites to a January 27, 2017 statement from Colvin-Ward that her psychotropic medication [Seroquel] was helping her.[84]  This statement was likewise cited by the ALJ, who then further detailed that statement as saying that Colvin-Ward "felt that her insight and judgment were going well and desired no change in her treatment."[85]  The ALJ also noted that when Colvin-Ward's mental condition required hospitalization in 2014, that was when she was not taking her medication, and her condition immediately improved when she resumed.[86]

On this record, and under the relevant standard of review, the ALJ here stated sufficiently good reasons for the weight assigned to the opinions of Dr. Svete, and further

---

[81] Tr. at 951.

[82] ECF # 16 at 13 (citing record).

[83] ECF # 25 at 13(citing record).

[84] *Id.* (citing record).

[85] Tr. at 34 (citing record).

[86] *Id*. at 32.

find that the ALJ built an accurate and logical bridge between the evidence in the record and her conclusions.

b.      *Dr. Phillips*

Here, Colvin-Ward again raises the argument that the ALJ's failure in this instance begins with her failure to fully follow the *Gayheart* rubric and so to articulate on all the factors relevant to weight.[87]  As noted above, however, I will consider the ALJ reasons and articulation in accord with the *Gayheart* standard as it has subsequently been understood by the Sixth Circuit.

In that regard, the ALJ provides a detailed discussion of Dr. Phillip's opinion, and of the reasons why it is accorded only little weight:

> Dr. Philips provided an opinion dated April 4, 2013, that the claimant can lift 15 pounds occasionally and 10 pounds frequently, can stand/walk for 2 hours; can sit for 5 hours; can rarely climb, stoop, crouch, kneel and crawl; can occasionally balance; and cannot work an 8-hour day. However, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.  Dr. Philips reported that the limitations were due to degenerative joint disease in the claimant's bilateral knees, hips back, hands, elbows, shoulder, and feet.  However, the doctors own treatment notes do not actually document these objective findings.  There is no evidence of objective abnormality to account for the doctor's opinion of upper extremity limitations.  There also is no evidence of acute abnormalities that would support her being unable to sustain an 8 hour day or having absenteeism.  The doctor reports specific limitations like elevating the claimant's legs due to edema; however, as explained earlier her examinations are negative for edema.  Given the lack of objective evidence and support in the treatment record,the opinion appears to rely quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to

---

[87] ECF # 16 at 20.

uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there existed good reasons for questioning the reliability of the claimant's subjective complaints. Accordingly, the undersigned places little weight on this opinion (Exhibit B8F).[88]

Accordingly, and under the relevant standard of review, I find no error in the ALJ's analysis of Dr. Philip's opinion, nor in the articulation of reasons as to why the weight assigned was given.

**2.    *RFC***

As noted, the issue concerning whether the RFC is supported by substantial evidence is related to the prior question as to the treatment of the opinions of treating sources. Having resolved that question I proceed to the RFC itself in light of that determination.

*a.    Mental*

Colvin-Ward contends that her mental RFC should be more restrictive, arguing that the ALJ's RFC is contradicted by all the opinion evidence in the record.[89] She asserts that the ALJ erred in finding that she has only mild limitations in areas of social functioning and activities of daily living, and further argues in that regard that Dr. Svete, as the one in best position to know, found significantly greater limitations in these areas than did the ALJ.[90] In fact, she alleges that there were no conflicting opinions at all as to these areas, but states

---

[88] Tr. at 33.

[89] ECF # 16 at 12.

[90] *Id*. at 15.

that both state agency psychologists agreed with Dr. Svete in finding there were greater than mild limitations in these areas.[91]

The Commissioner, however, notes that the evidence as cited above does not show deterioration in Colvin-Ward's mental condition, but rather documents that her medication is helping her. Moreover, the ALJ observed that the state agency reviewers's opinion as to moderate limitations on social functioning was not consistent with evidence at the hearing that documented Colvin-Ward's level of social interaction with her friends, boyfriend and family, nor with Colvin-Ward's own appearance at the hearing.[92]

On this record, and given the prior finding on the weight given to medical source opinions, I find that substantial evidence supports the RFC as to mental limitations.

B.     *Physical*

Similarly, Colvin-Ward argues that the RFC's physical restrictions are based on a "factual analysis of the evidence that is just wrong and ignores long-standing and substantial impairments and that relies on outdated opinions issued without reviewing MRI evidence and another year's worth of clinical exam findings showing significant functional limitations."[93]

The ALJ began a discussion of Colvin-Ward's physical condition by noting at Step Two that she does have the severe impairment of a back disorder caused by degenerative

---

[91] *Id.* at 15-16.

[92] Tr. at 33.

[93] ECF # 16 at 18.

disc disease of the lumbar spine.[94]  The ALJ then observed that while this condition could be reasonably expected to produce disabling symptoms, Colvin-Ward was not entirely credible in her claims regarding the intensity, persistence and limiting effects of these symptoms.[95]

Addressing the degenerative disc disease, the ALJ stated:

> Regarding the claimant's degenerative disc disease, as explained in the prior decision, while the claimant's lumbar MRI shows abnormalities, the examining doctor Dr. Lee, did not opine that the abnormalities were disabling. Her physical examinations have been generally unremarkable showing full range of motion, normal strength, normal gait, and negative straight leg raise testing (Exhibit Bl A/8-9). The new evidence shows no particular worsening in her back disorder. She has L5-Sl right disc herniation with moderate right-sided neural foraminal narrowing (Exhibits Bl l F/3; Bl 7F/25; B19F/ 15). Again, a doctor, this time Dr. Al-Amin A. Khalil, explained that the findings on the claimant's MRI are not consistent with her current symptoms (Exhibit Bl l F/3).[96]

In addition, the ALJ observed:

> Additionally, her physical examinations have shown some tenderness at times, but no evidence of other sever ongoing musculoskeletal or neurological abnormality (Exhibits BlF/7; B4F/5; B9F/ 10; B13F/ l7; Bl 7F/2 Bl9F/40; B27F/20; B30F/ 16). For example, her May 2013 examination showed normal range of motion, no edema, no tenderness, no weakness, no gait abnormality, and no neurological abnormality (Exhibit B9F/12, 26). Similarly, a thorough December 2013 examination, showed a normal neuromuscular exam, including strength, reflexes, sensation; no instability; normal sacral, sacroiliac joint , coccyx, pelvix, and clavical examination; ane entirely normal upper and lower extremity examination other than some mild right shoulder tenderness (Exhibit Bl6F/21-22). She did have a mild antalgic gait and more recent MRI evidence

---

[94] Tr. at 26.

[95] *Id*. at 30.

[96] *Id.*

supporting that she may occasionally need a cane; however, as indicated above, there is no evidence of frequent or long term gait abnormality or weakness. For example, in July 2014 she presented to treatment wearing sandals, and was active without the use of a cane or brace (Exhibits B22F/36; B24F/ l). Thus, the record does not support more frequent use of a cane or walker or further limitation in her ability to stand and walk (Exhibit Bl6F/20; see also Exhibits Bl8F; B30F/5-7).[97]

Further, the ALJ found:

The claimant is obese. However, compared to the prior ALJ decision, the claimant's obesity has improved. She previously weighed 204 pounds and had a BMI of about 37.49. Whereas, the claimant now weighs about 175-180 pounds with a BMI of about 32-33 (Exhibits B9F/ l l; B26F/2).

As explained earlier in this decision, while the claimant alleges ongoing seizures and symptoms of lupus, her complaints are not supported by the record (See, e.g., Exhibit B6F/ 17, 23). There is no evidence of lupus, active synovitis, or an autoimmune or connective tissue disease (See, e.g., Exhibit B30F/ 17).[98]

The ALJ discussed Colvin-Ward's activities of daily living as follows:

The claimant has provided inconsistent information regarding daily activities. For example, she reports having problems leaving the house and interacting with others, but she reported on multiple occasions during treatment that she had a lot of good friends, was going out partying with friends, was doing drug running for her boyfriend, and was spending much time with her children and grandchildren (Exhibits B12F/ 1; B19F/74; B22F/28). Her explanation for her drug use also demonstrates that she retains social skills to interact with others; she has friends, and she leaves the house for social reasons (Hearing Testimony). The claimant also alleges attention problems, but her treatment records document no clinical evidence of attention deficit (See, e.g., Exhibit B3F/3). Despite her allegation of having poor attention to complete tasks, she provided inconsistent information during treatment, describing how she was

---

[97] *Id*. at 31.

[98] *Id*. at 31-32.

-21-

writing and then had completed writing 6 different books (Hearing Testimony; Exhibit B12F/2).[99]

The ALJ then addressed the details of the functional opinion of Dr. Philips, which opinion was given little weight in an analysis that was more thoroughly evaluated above:

> Dr. Philips provided an opinion dated April 4, 2013, that the claimant can lift 15 pounds occasionally and 10 pounds frequently, can stand/walk for 2 hours; can sit for 5 hours; can rarely climb, stoop, crouch, kneel and crawl; can occasionally balance; and cannot work an 8-hour day. However, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. Dr. Philips reported that the limitations were due to degenerative joint disease in the claimant's bilateral knees, hips back, hands, elbows, shoulder, and feet. However, the doctors own treatment notes do not actually document these objective findings. There is no evidence of objective abnormality to account for the doctor's opinion of upper extremity limitations. There also is no evidence of acute abnormalities that would support her being unable to sustain an 8 hour day or having absenteeism. The doctor reports specific limitations like elevating the claimant's legs due to edema; however, as explained earlier her examinations are negative for edema. Given the lack of objective evidence and support in the treatment record, the opinion appears to rely quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there existed good reasons for questioning the reliability of the claimant's subjective complaints. Accordingly, the undersigned places little weight on this opinion (Exhibit B8F)[100]

As is evident in the extended and detailed review of the evidence set forth above, and also evident in the multiple statements of reasons as to the conclusions drawn from that evidence, I find it difficult to credit Colvin-Ward's stark and sweeping allegations that the

---

[99] *Id*. at 33.

[100] *Id.*

ALJ's treatment of the evidence was "just wrong" and "ignore[d] long-standing and substantial impairments." More specifically, Colvin-Ward now claims that the ALJ's analysis is flawed because it relies on "outdated" opinions and because it does not take into account newer evidence[101] - in particular a December 2013 MRI that allegedly shows "significant progression" of her disc disease.[102] She also claims that the earlier evidence, extending back to October 2011, provides evidence of the extent of her back impairment.[103]

In considering the claims related to the December 2013 MRI, the ALJ, as noted, discussed the physical examination of this date in some detail, and further noting that "more recent MRI evidence" supports the need for occasional use of a cane, but does not support a finding of frequent or long-term gait abnormality.[104] The ALJ further observed that in July 2104 - or after what is now claimed to be the decisive December 2013 proof of a worsened disc disease - that Colvin-Ward "presented to treatment wearing sandals, and was active without the use of a can or brace."[105]

In sum, and after reviewing the evidence cited by the ALJ, considering her reasons for the conclusions drawn from that evidence under the relevant standard, and exploring the allegations raised by Colvin-Ward with reference to the ALJ's opinion as a whole, I find that

---

[101] ECF # 16 at 18.

[102] *Id.* at 17.

[103] *Id.* at 16.

[104] Tr. at 31.

[105] *Id.* (citing record).

substantial evidence supports the ALJ's assessment of Colvin-Ward's mental and physical functional limitations.  I then further find that the RFC here is supported by substantial evidence for the reasons stated.

### Conclusion

For the reasons stated, I find that the decision of the Commissioner to deny benefits to Tonia L. Colvin-Ward is supported by substantial evidence, and that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: September 26, 2017                              s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge